COURT OF CHANCERY
OF THE
STATE OF DELAWARE

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

May 28, 2024

Itshak On
Keren-Or On
24 Haavoda St.
Tel-Aviv, Israel 6382132

Jack Yoskowitz, Esq.
Laura E. Miller, Esq.
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004

J. Clayton Athey, Esq.
Seth T. Ford, Esq.
PRICKETT, JONES & ELLIOTT, P.A.
1310 N. King Street
Wilmington, Delaware 19801

Re: *Kevin Kulak v. Itshak On, et al.*
C.A. No. 2023-0011-KSJM

Counsel and Parties:

On May 17, 2024, I heard argument on the parties' cross-motions for sanctions. I ruled from the bench on aspects of the cross-motions. Specifically, I determined to take the plaintiff's motion for sanctions under advisement to allow the trial record and arguments to inform a resolution.[1] I also rejected an aspect of the defendants' motion for sanctions relating to the plaintiff's use of deposition transcripts, as discussed below. This letter decision resolves the remaining issues raised by the

---

[1] In the plaintiff's motion for sanctions, he argued that the defendants spoliated evidence and sought an adverse inference because of it. C.A. No. 2023-0011-KSJM Docket ("Dkt.") 55 ¶ 5 ("Pl.'s Mot. for Sanctions"). I took this motion under advisement and informed the parties that I will allow the action to proceed, allow the evidence to come in, and then reevaluate whether adverse inferences, or fee shifting, are appropriate in light of the gaps in the full record. Dkt. 88 ("5/17/24 Oral Arg. Tr.") at 20:5–21:23.

cross-motions, as well as the defendants' motion to compel, and the defendants' motion to limit deposition. For the reasons discussed below, the defendants' motions are denied.

I assume the reader's familiarity with this action and refer readers to my prior decisions for a recitation of the factual background.[2]

## A.     The Defendants' Motions For Sanctions

The defendants seek sanctions on the grounds that: (i) the plaintiff's counsel lied by averring that the deposition transcripts were accurate representations of the defendants' depositions; (ii) the plaintiff's counsel prohibited the defendants from recording their depositions; and (iii) the plaintiff's counsel lied by averring they had not received Movado's bank records.[3] I ruled from the bench that the relief available to the defendants for their disputes concerning the transcription is to submit an errata sheet.[4] I took the two other matters under advisement.

On the Movado bank records, the defendants seem to be arguing that the plaintiff's counsel made a false statement by averring that "the Individual Defendants' fail[ed] to retain bank records for Movado."[5] To the defendants, because

---

[2] Dkt. 53 ("1/9/24 Oral Arg. Tr."); 5/17/24 Oral Arg. Tr.

[3] Dkt. 59 ("Defs.' First Mot. for Sanctions") ¶¶ 19–36; Dkt. 61 ("Defs.' Second Mot. for Sanctions") ¶¶ 17–30.

[4] Defs.' First Mot. for Sanctions, Ex. 1.

[5] Defs.' Second Mot. for Sanctions ¶ 4 (bold omitted).

they produced some bank records and an "Account Activity Spreadsheet" compiled by Ms. On that reflected bank records, they did not fail to retain bank records.[6]

I already considered this argument when I ruled on the plaintiff's motion to compel. I found that the defendants' production was insufficient and ordered the parties to subpoena Movado's bank.[7] Accordingly, the plaintiff's counsel did not make a misrepresentation. In any event, this part of the motion is moot in light of my previous ruling. To the extent it is not moot, it is not a basis for sanctions.

Concerning the deposition recordings, the defendants allege that the plaintiff's counsel violated Court of Chancery Rule 30 by refusing "to permit audio recording during the Deposition, despite the Defendant's explicit request in the beginning of the Deposition."[8] The plaintiff claims that his counsel rejected Mr. On's attempt to record the deposition because Mr. On did not provide notice before the deposition.[9]

---

[6] Defs.' Second Mot. for Sanctions ¶ 3 ("The August 2021 through February 2022 statements, together with the Account Activity Spreadsheet, provide a complete picture of Movado's account activity up to March 2022 when Movado closed its account.").

[7] 1/9/24 Oral Arg. Tr. at 25:9–21 ("It seems like the defendants are willing to produce their personal bank statements in redacted form. So they need to do that. I don't have enough information to either believe or doubt the representations concerning their efforts to get records from the bank, but I think that the next step should be to subpoena those documents. And I'm ordering the defendants to be fully cooperative.").

[8] Defs.' First Mot. for Sanctions ¶ 19.

[9] Dkt. 64, Miller Aff. ¶ 6 ("Without any prior notice, at the start of his deposition, Mr. On stated he wanted to tape the deposition using some type of recording medium not supplied by Esquire. Plaintiff's counsel responded that he did not agree to the unnoticed means of recording and that the court reporter was the official record of Mr. On's testimony.").

Court of Chancery Rule 30(b)(4) provides that a party may record a deposition "[w]ith prior notice to the deponent and other parties."[10] Mr. On did not provide prior notice.[11] Accordingly, the plaintiff was within his rights to object to Mr. On's attempt to record his deposition on his own audio device. If the defendants wanted to record depositions on their own devices, they needed to send notice prior to the scheduled time of their deposition. This rule does not change because the defendants have elected to represent themselves.[12]

The defendants' motions for sanctions are denied.[13]

## B. The Defendants' Motion To Compel

The defendants moved to compel production of "certain documents improperly withheld" and to amend the plaintiff's responses and objections.[14] Specifically, the defendants seek:

---

[10] Ct. Ch. R. 30(b)(4).

[11] Dkt. 64, Miller Aff. ¶ 6; Defs.' First Mot. for Sanctions ¶ 19 (stating the request was made "in the beginning of the Deposition").

[12] *See Draper v. Med. Ctr. of Del.*, 767 A.2d 796, 799 (Del. 2001) ("There is no different set of rules for pro se plaintiffs.").

[13] The defendants also allege that the plaintiff should be sanctioned because the plaintiff or his counsel: (i) engaged in a coup to "surreptitiously gain[] control over the company"; (ii) filed an unmeritorious motion for sanctions; (iii) "engaged in perjury by knowingly providing false testimony under oath," and (iv) misstated a date in an exhibit. Defs.' Second Mot. for Sanctions ¶¶ 11–12, 18–21. None of these arguments work. The first issue does not strike at litigation conduct; it is merits-based and not before the court. The second argument is off base, as discussed above. The third argument is baseless, as the defendants do not specify which averments were purportedly false. And the fourth issue appears to complain about a scrivener's error, as the correct date appears on the exhibit itself. *See* Pl.'s Mot. for Sanctions, Ex. 12.

[14] Dkt. 65 ("Defs.' Mot. to Compel").

- Production related to requests 2, 4–7, 10, 12, 14–25, and 31–33.[15]

- "Production of Documents and Privilege Log consistent with the Rules of the Court of Chancery."[16]

- "Production of all the WhatsApp Communications with Fizio Health or with Movado's Investors, founders, and employees, responsive to requests #28 and #29."[17]

- "Production of all Communications concerning the Potential Asset Purchase, including, but not limited to, Communications with Fizio Health or with Movado Investors in the Plaintiffs accounts."[18]

The defendants then ask for a litany of discovery, including "[t]he identity of the third-party funder(s)," "a detailed list of all current and former employees, advisors, and contractors of Fizio Health, particularly those who were previously associated with Movado," and "all forms of electronic communication exchanged between the identified employees, advisors and contractors, and Fizio Health, specifically focusing on discussions related to Movado or concerning the ongoing lawsuit."[19]

The plaintiff argues that the discovery requests are untimely, irrelevant, and improper.[20] The plaintiff adds that the parties had already agreed on a number of these discovery issues—specifically, the parties agreed that neither party would

---

[15] *Id.* ¶ 7.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.* ¶¶ 18–22.

[20] Dkt. 71 ("Pl.'s Opp'n to Defs.' Mot. to Compel") ¶¶ 12–20.

request production of documents related to the "Potential Asset Purchase," which constitute production requests 27 through 30, and that the parties would produce categorical privilege logs.[21]

The defendants respond that their previous counsel did not agree to not request production of RPFs Nos. 27–30,[22] and that they are not bound to their former counsel's representations because the past agreements were "based upon bad faith and abuse of process."[23]

"In evaluating a motion to compel discovery, the Court determines whether the discovery sought is reasonably calculated to lead to admissible, non-privileged evidence."[24] "The scope of permissible discovery is broad, therefore objections to discovery requests, in general, will not be allowed unless there have been clear abuses of the process which would result in great and needless expense and time consumption. The burden is on the objecting party to show why the requested information is improperly requested."[25]

---

[21] *Id.* ¶¶ 10–20.

[22] Dkt. 76 ("Defs.' Reply Br. in Support of their Mot. to Compel") ¶ 10.

[23] Pl.'s Opp'n to Defs.' Mot. to Compel, Ex. 7 at 1.

[24] *Hunter v. Bogia*, 2015 WL 5050648, at *2 (Del. Super. July 29, 2015) (citing Super. Ct. Civ. R. 26(b)(1)); *Alberta Sec. Comm'n v. Ryckman*, 2015 WL 2265473, at *9 (Del. Super. May 5, 2015)). Superior Court Civil Rule 26(b)(1) is functionally identical to Court of Chancery Rule 26(b)(1).

[25] *Prod. Res. Gp., L.L.C. v. NCT Gp., Inc.*, 863 A.2d 772, 802 (Del. Ch. 2004) (citations and internal quotation marks omitted).

The defendants' motion to compel fails procedurally. Document discovery closed on December 1, 2023, and the defendants waited until February 26, 2024 to make their additional discovery requests.[26] Accordingly, the discovery requests were untimely.

The defendants' motion to compel fails on the merits as well. As to the first category of documents, the defendants do not specify what they are seeking and why the current production is insufficient. As to the second category, the parties agreed to use categorical privilege logs, which have already been produced.[27] As to the third and fourth categories, the parties agreed not to produce documents related to the Potential Asset Purchase.[28]

---

[26] Defs.' Mot. to Compel, Ex. 15; Dkt. 27 at 3.

[27] Pl.'s Opp'n to Defs.' Mot. to Compel, Ex. 6 at 1 (March 8, 2024 letter to the defendants explaining that the parties previously agreed to use categorical privilege logs, which had been served on September 8, 2023); *id.* ¶ 11; *see, e.g.*, *id.*, Ex. 10 at 3. I find that the plaintiff did not engage in any bad faith or abuse of process, so to the extent that the defendants argue that would allow them to renege on their former counsel's previous agreements, that is rejected.

[28] *Id.*, Ex. 4 at 2 (June 21, 2023 email from the plaintiff's counsel to defendants' counsel: "Indeed, as you correctly note, Plaintiff's sole substantive allegation relating to the Potential Asset Purchase concerns Mr. Kulak's discovery during the diligence process that Movado did not possess the technical capabilities represented by Defendants. While Plaintiff intends to produce documents and communications relating to that discovery, Defendants have articulated no reason – nor can they – as to why the Potential Asset Purchase is otherwise relevant."); *id.* at 2 (June 22, 2023 email from defendants' counsel to the plaintiff's counsel: "Regarding Defendants Requests Nos 27-30, I believe the position I expressed at our meet and confer was that Plaintiff's proposal might be acceptable, but that we would need time to consider and confirm that. Regardless, if Plaintiff intends to produce documents concerning Plaintiff's alleged discovery about the technology and the case study, then we see no reason to continue this dispute over these Requests."). The defendants argue that the representations of the previous counsel were not a "definitive withdrawal." Defs.'

The defendants' motion to compel is denied.

## C. The Defendants' Motion To Limit Deposition

The defendants moved to "limit deposition."[29]  They state that the plaintiff's counsel submitted an "altered Certified Transcript" of the defendants' depositions.[30] As relief, the defendants seek: (i) a criminal referral of the plaintiff and his counsel; (ii) the release of the audio recordings or the use of an automated transcription service going forward; and (iii) the exclusion of the third-party deposition vendor the plaintiff's counsel used.[31]  I addressed most of these arguments in connection with the motion for sanctions.  As I stated then, the appropriate method for disputing a transcript in this context is to submit an errata sheet, which the defendants did.  The rest of the defendants' requested relief is misguided and denied.

## D. Fees

The plaintiff requested that the court order the defendants pay for the fees the plaintiff incurred in bringing his motion for sanctions and defending against the defendants' four motions.  I have taken the plaintiff's motion for sanctions under advisement, so I will address fee shifting concerning that motion later.  I am tempted to shift fees in connection with the defendants' other motions.  The plaintiff makes a

---

Reply Br. in Support of their Mot. to Compel ¶ 10.  But since the June 2023 correspondence, there has been no further negotiations over those categories of documents, and document discovery closed without mention of those categories.

[29] Dkt. 79 ("Mot. to Limit Dep.").

[30] *Id.* ¶ 10.

[31] *Id.* at 5.

compelling argument that the motions for sanctions constitute abusive and harassing behavior. The defendants sent the motions for sanctions to plaintiff's counsel's firm to ask the firm to investigate the plaintiff's counsel.[32] This attempted smear campaign was intended to harass. The defendants' only saving grace is that their efforts were so make-weight that they did not work.[33] I will not be so lenient in the future if the defendants engage in similar conduct.

Given the timing, I am vacating the three-day trial set to commence on June 4, 2024, and ordering the parties meet and confer on a new trial date.

IT IS SO ORDERED.

Respectfully,

*/s/ Kathaleen St. J. McCormick*

Kathaleen St. Jude McCormick

---

[32] Dkt. 66, Ex. 1 at 1 (Pl.'s Omnibus Opp'n to Defs.' Motions for Sanctions).

[33] *See id.*